May it please the Court, Nathaniel Pollack representing the United States in this appeal. The government's principal contention in this case is that the regulation here at issue is valid. Therefore, the refund claim is untimely and jurisdiction is lacking. The regulation defines use of certified or registered mail or a designated private delivery service as the exclusive means of proving that a tax document was delivered. Sorry, I'm going to interrupt you. I know that part of it. I have something I'd like you to give a comment on, please. I'm not entirely convinced that we need to look to the regulation and perform a Chevron analysis. The statute here doesn't seem ambiguous. However, I know in Anderson this Court said the language of the statute does not bar admission of extrinsic evidence to prove timely delivery. So my question to you is, does Anderson require us to say the statute is ambiguous or is there another way to distinguish Anderson? Your Honor, I think Anderson's holding is that the statute does not address the question of the continuation of the common law mailbox rule. So what I take to be the holding of Anderson is the statute itself does not reflect a clear intent by Congress to displace the common law mailbox rule. And then Anderson went on to rely, as this Court often does in situations where the statute itself is not clear, on a canon of statutory construction, in this case the canon of statutory construction that where there's nothing else that or where there's nothing in the statute that directly speaks to the issue,  Now... Didn't it speak to the issue? It spoke about mailing. So it speaks to the issue in the sense that the statute itself does not directly say the common law mailbox rule continues in force, nor does it directly say the common law mailbox rule is abrogated. And the circuit split over time as to which of those two outcomes was correct. That's correct, Your Honor. And so the ambiguity on that specific point in the statute I think is very sort of clearly illustrated by that circuit split. Right? So it's at least quite unlikely that a dozen court of appeals judges would come almost, you know, almost down the middle on one side or the other on the question of, well, does the common law mailbox rule continue in force or is it superseded by the statute pre-regulation? And so that in itself is, I think, strong evidence of the existence of a gap in the statute that can be filled by a reasonable regulation. And I have a question about the interpretation of the regulation itself and the statute. The regulation potentially carries its own ambiguity because it seems to talk about the date of delivery, which assumes that there is a delivery. And, for example, if something arrives three days late but you can show that it was mailed in time, then clearly the regulation covers that. And another way to read it is the way you are reading it, which is that it provides the ‑‑ it was intended to cure this circuit split and provide that the mailbox rule is gone. Your Honor. And I just ‑‑ do we have to reach, in addition to Chevron deference, potentially our deference also, which is on shaky ground potentially? Your Honor, I don't believe so. And I would respectfully disagree with the premise of your question that the regulation itself is unclear. I think if you look at the particular provision at issue here, subsection E2 of the regulation, it really emphasizes the point on the exclusivity of the certified and registered mail receipt requirement for proving that a document was delivered. And the sentence that I would stress is, no other evidence of a postmark or mailing will be prima facie evidence of delivery or raise a presumption that the document was delivered. And it is titled exceptions to actual delivery. Yeah. And so I think that, you know, there's one court, and it's featured prominently in the opposing ‑‑ in the appellee's brief. The Philadelphia Marine decision out of the Third Circuit, I think clearly misinterpreted the statute and read it to mean that ‑‑ read it to only provide a rule where a document ends up being delivered, but delivered late. I think there's just no way to read the statute that way. The statute ‑‑ The statute or the regulation? The statute. The statute. The statute very clearly in subsection A, you know, certainly provides a late delivery rule. But in subsection C, and especially if you look at subsection C1A, it says, you know, such registration shall be prima facie evidence that the return claim statement or other documents was delivered. Was delivered. And as we pointed out in the reply brief, there's actually ‑‑ the contemporaneous legislative history really affirms that, because what ‑‑ first, before Congress made the rule applicable to all tax documents, it exempted tax returns. And then a couple of years later, it came back, it exempted tax returns and payments. So payments and tax returns did not sort of qualify for this statutory mailbox rule as an initial matter. And then Congress came back and said, okay, we're going to ‑‑ it's working well. We're going to include payments in the mailbox ‑‑ or include tax returns in the mailbox rule. We're also going to include payments, but we're not going to include payments in the delivery rule. In other words, where ‑‑ The money has to actually show up. The money has to show up. So even a registered mail receipt is not a statutorily, you know, presumptively evidence of delivery for payments, while it is a tax return. You know, and I would emphasize also the point that each of the courts, this court in Anderson and other courts that ‑‑ the Eighth Circuit in Wood and even the one opinion in the Tenth Circuit case, they've all relied on this question of this common law gap filling canon of statutory construction to reach the conclusion that the statute left in place the common law mailbox rule. And it's clearly the case that where the common law supplies ‑‑ exercises a gap filling function, in that sense the common law works very much the same as the regulatory structure that we have in a Chevron world. So the common law can fill a gap, but the fact that a common law fills a gap is very strong evidence that, A, there is a gap, and, B, that the, you know, there's no presumption against the agency filling the gap differently than the common law filled it. And so that itself is, I think, very strong evidence, too. And I would also say, too, the, you know, Brandeis has ‑‑ you know, that structure, that case many times has said, you know, as Brandeis itself says, that unless the prior opinion says this is the only reasonable view of the reading of the statute, then there's room for a regulation. This Court's decision in Anderson and the holding there, which I've already quoted, I think it's difficult to conceive of too many cases that could be much more clear that the Court was not reading the statute as unambiguous, requiring the interpretation that the Court gave it with no room for the possibility of a regulation. And so we would urge this Court to defer to the regulation under Chevron, and not see Anderson as an impediment to that deference under Brandeis. Just one question. I gather we don't have any published circuit level authority that addresses this particular issue? The validity of the regulation. No, no. And there is no Court of Appeals decision that addresses the validity of the regulation. There's a First Circuit opinion that discusses it briefly, but didn't reach the issue. So that, yeah. I suppose if there are no other questions, I'll. You may reserve the remainder of your time. Mr. Keister. May it please the Court. Robert Keister, appearing on behalf of the appellees Howard and Karen Baldwin. The first issue I'd like to address is whether or not Internal Revenue Code Section 7502 even applies, based upon the facts in this case. And the reason for that is because if Section 7502 doesn't apply, then the Treasury regulation, which the government is relying upon, doesn't apply. Because Treasury regulation Section 7502-1 only applies to Internal Revenue Code Section 7502. We all know that the purpose of 7502 is to afford taxpayers the ability to file their tax returns on or about the date that those returns were due. Even though the return ultimately is received by the IRS after the date the return is due, 7502-A-1 deems that return to be timely filed based upon the postmark. Now, 7502-A-1 does not apply to this case for two separate reasons. Number one, it only applies when the tax return is actually received by the IRS. In this case, the IRS disputes whether or not it received the admitted return at issue in this case. Number two, 7502-A-1 only applies when the return is filed at or about the date the return was due. April 15th, April 14th. In this case, the amended return was filed almost four months before it was actually due. It was filed on June 11th, 2011. The return wasn't required to be filed until October 15th, 2011. So in this case, you have a situation where the taxpayers actually filed the return four months before it was required to be filed. So under Section 7502-A-1, that section cannot apply under the facts of this case. I guess I'm not really following your argument. I see 7502-A-1 as just involving the situation, I think as your opponent said, where the thing is actually delivered. And it's just a question as to whether the delivery was timely, right? And here, that's the whole dispute. The IRS says there was no delivery back in the time frame that matters for your client's purposes. It's not a relevant provision for that purpose. Correct. I agree, Your Honor. The next analysis is to say whether or not 7502-C-1 is applicable, right? And 7202-A-1 is not applicable because your clients didn't send the thing by registered mail. Which is where the gap comes in, I guess. Right. Well, it's not where the gap comes in because under Anderson, the court specifically found that Congress did not intend to supersede the common law when it enacted 7502-C-1. But the regulation postdates Anderson, right? That's correct. So if the regulation is valid, and we were to conclude that it's valid and fills a gap that the statute left, then we would no longer be bound by Anderson, both under Brand X and under our own Miller v. Gammie case, which permits us to look at subsequent binding events. So it seems to me that the regulation intends to fill this gap, intends to resolve the circuit split, and intends to make the proof of mailing by registered, et cetera, the exclusive means of demonstrating delivery where no actual delivery occurred. So what's wrong with that thought? What's wrong with that, Your Honor, is that under Home Concrete, okay, which is almost on all fours with the facts in this case, in Home Concrete you had a statute that dealt with the circumstances under which the IRS could go back and seek a deficiency against the taxpayer, essentially extending the normal three-year statute of limitations to six years. And the issue in Home Concrete was whether or not an adjustment to the taxpayer's basis in property. Taxpayer reports a basis higher than it should have. As a result of that, the gain on that property was less than it should have been. Does that get thrown into the hopper in determining whether or not the taxpayer excluded more than 25 percent of his or her gross income? That when Congress enacted 6601, they did not intend to include a basis adjustment in part of the determination as to whether or not there had been an omission of more than 25 percent of the gross income. What happened after Colony, just like what happened in this case, the IRS decided it was going to adopt a regulation to overrule the Colony decision, just like the IRS decided it was going to adopt a regulation in this case to overrule this Court's decision. And what did the Supreme Court say in Home Concrete? That because the Colony Court found that Congress did not intend to include basis adjustments in the determination of whether or not there had been more than a 25 percent omission of gross income, that decision has already concluded what the Congressional intent was. There is no gap to fill. Well, that requires two steps, it seems to me, that are difficult to take. One is assuming that our precedent has the same effect as a Supreme Court precedent describing Congressional intent. And the other is, I guess, a reading of Anderson that doesn't view it as gap-filling. And I'm not sure I get quite where you're going. Well, Your Honor, the Court, Justice Pragerson and Anderson, specifically found that when Congress enacted 7502, and I'm actually reading from the opinion, he says, furthermore, we agree with the Eighth Circuit that the enactment of Section 7502 did not displace the common law presumption of the statute itself does not reflect a clear intent by Congress to displace the common law mailbox rule. Accordingly, we decline to read Section 7502 as carving out exclusive exceptions to add the old common law physical delivery rule. Well, I understand that to be saying there's a gap, that Congress didn't override something, they didn't deal with it. There is no gap because there's been a determination by this Court in Anderson of what the Congressional intent was. That is the same thing that happened in Home Concrete. There was a determination by the Supreme Court in Colony as to what the Congressional intent was. I don't think you're reading the case correctly. You're correct that the passage you just read is the key one for our purposes, but I read it the way Judge Graber does. Our Court wasn't saying that Congress had affirmatively decided to codify the common law mailbox rule. That would be a different thing. If our Court had said that, I agree with you, we would not be free to just defer to the Red. But the way I read the case is the way Judge Graber does. The Court just simply said the statute really doesn't seem to speak to this, so given that ambiguity, we're going to default to what the common law rule is. And let me continue with that thought and try this more simple analogy on you. In Brand X, the Supreme Court said that any prior judicial construction of ambiguous statutes are superseded by reasonable agency interpretations of those statutes. So here, if we determine the agency's interpretation is reasonable, then would you agree that our prior decision in Anderson does not prevent us from deferring to the regulation? I disagree, Your Honor. I guess it depends on how you interpret Anderson. I disagree from the standpoint of whether, the issue in this case is whether or not this Court in Anderson determined whether it was the Congressional intent to displace. The common law mailbox rule. Now, counsel has taken the position that the way that Judge Pragerson did that was based upon a traditional tool of statutory construction. And that by interpreting the statute based upon the fact that unless it's clear that the intent is to override common law, the statute is not intended to override common law. And because it was a tool of statutory construction, that somehow that changes the analysis under Chevron. And I'm going to quote from what was stated by the Supreme Court in Home Concrete. It said, Chevron added that if a court employing traditional tools of statutory construction ascertains that Congress had an intention on the precise question at issue, that intention is the law and must be given effect. That is what the Supreme Court held Chevron requires. What we have here is just Judge Pragerson finding that the Congressional intent in enacting 7502 was not to override the common law. That's what Judge Pragerson found. He said in order for that to have occurred, the statute must have been clear. That the statute was not intended by Congress to overrule common law. That's a finding. That is now the law. The government does not get to come in and override Judge Pragerson's decision on the basis that there's some ambiguity just because the statute itself does not specifically address the common law issue. Because under well-established Supreme Court authority, if the statute doesn't address it, it's assumed to continue to be in existence. And that is the salient point here. The other point I would like to raise is even if the statute is entitled to deference, or the regulation is entitled to deference under Chevron, we believe that the statute should not be applied retroactively. I have a question about that. Section 7805B of the Internal Revenue Code provides, Congress has provided, that the statute should not be applied retroactively. It provided the timing for the application of Treasury regulations. And one part of it, it's to be the earliest of the following dates, and the key one here is the date on which the regulation is filed with the Federal Register. And this regulation was filed in the Register on September 21, 2004. And the events here took place in 2011. So I don't understand why there's any retroactivity problem. No dispute, Your Honor, that in the normal circumstance, the Treasury Department has the ability to issue temporary regulations, proposed regulations. At a subsequent date, those regulations become final and they are made retroactive. We have no dispute about the power of the Commissioner to, in most circumstances, generally have his or her regulation be deemed retroactive. The issue here, though, is where you have a regulation that changes, supersedes, and overrules well-established case law in the Ninth Circuit that the common law mailbox law applies to. I don't see an exception for that in the statute here. The regulations apply beginning on the dates that are listed there. It doesn't say unless, gosh, some circuit has a different viewpoint. So in their reply brief, Your Honor, the government cited Reserve Drilling Partners versus Commissioner of Internal Revenue. That's 152 Fed Third 1181. That's a case they cited. I'm reading from that case right now. They said, the decision of the Commissioner, the delegate of the Secretary to make a ruling or regulation retroactive is reviewed for an abuse of discretion. But this isn't retroactive. That's my point. It's the date on which it becomes effective to be applied, which is not exactly retroactivity. It's a decision to a period before when it's actually determined to be final and effective. And in this case, they say that the Commissioner abuses his discretion if giving retroactive effect to a regulation produces an unduly harsh result for an individual taxpayer. Reliance on settled law or on a specific favorable ruling constitutes evidence of a harsh result. And those are similar to the Montgomery Ward factors that we cited in our case, Your Honor, in terms of when the Commissioner would make a ruling. So even a determination with respect to an administrative action which changes existing law should be retroactively applied. So I would urge this Court, even if it were to find that the regulation is entitled to deference under the Chevron ruling, that it should find that that regulation should only be applied prospectively because in this case... And only in our circuit, I guess? Everywhere else it's okay? Well, with respect to the... There are actually several other circuits that have adopted the rule in action. So in half the country, but the other half of the country, it's perfectly fine to make it retroactive. That's your position? Yes. Thank you, Counsel. Your time has expired. And Mr. Pollack, you have a few minutes still on clock. Just a few brief points, Your Honor. One is I think there's just no reasonable way to read this Court's decision in Anderson as having concluded affirmatively that Congress had an intent with respect to the continuation or non-continuation of the common law mailbox rule. I would also say that the Affili's home concrete argument would, I think, assumes that home concrete very definitively circumscribes Brand X, and that's just not the way that this Court has interpreted home concrete. And in fact, home concrete itself, in the majority part of that opinion, reaffirms the central holding of Brand X. And I think the facts of home concrete that are maybe unique and distinguishing in addition to the fact that the colony decision was a Supreme Court decision, it was also pre-Chevron, and it was also a case where there had been discussion of legislative history, and the legislative history suggested that there was, in fact, a definitive congressional decision. And so I think that there was a congressional intent with respect to the issue at hand, although perhaps it was unclear what that intent was, but that's not the circumstance that is present here. Very briefly on the retroactivity point and the, I think, novel argument, I think people in the Ninth Circuit are not, or the Eighth Circuit, are not in a fundamentally different position with respect to gauging the validity of a regulation than anybody else, right? So why Brand X sort of maps on really well with Chevron is that you're left, whether you have a circuit precedent or not, the first question is, is either the precedent or just the regulation itself, or the statute itself, I'm sorry, clear on its face, you know, admitting no ambiguity. If that's true, and the regulation departs from what is clear and unambiguous, then you can conclude, whether there's a prior judicial precedent or not, that, well, the regulation is inconsistent with what the only permissible possible reading of the statute, and therefore it must be invalid. And so I don't think that there's any different reliance interest that would be present in a case where there was a prior decision. I think it's a safe assumption that the taxpayers here did not consult our Anderson decision when they instructed their employee to go to the... And I would just finish with, the obvious is very, very significant practical implication of this case where there's, you know, millions of tax documents filed. The result of the rule that the FLE is advocating is that essentially the ability to file a refund claim, the jurisdiction of the court, and lots of other sort of legally significant consequences hinge on credibility determinations that are necessarily going to vary from case to case. It could easily be the case that a district court could have looked at the facts here and said, well, I don't find Mr. Werfel, the assistant, credible based on factors, and that decision would certainly be affirmed in clear error review, and there are going to be countless decisions like that where, you know, the district court, similarly situated, would be treated differently based on just the varied credibility determinations that would inherently be part of the system if the common law mailbox rule continued in force. And so I would respectfully ask this court to conclude that there is no jurisdiction here and rule accordingly. Thank you, Your Honors.
judges: Graber, Watford, Zouhary